IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

FREDERICK J. BARTON                                                           PLAINTIFF
ADC #142505

V.                          Case No. 4:23-CV-00447-DPM-BBM

JAMES HILL, Sergeant, P.C.R.D.F.;
VIRMESA JACKSON, Deputy, P.C.R.D.F.;
MATTHEW COBB, Sergeant, P.C.R.D.F.;
CHARLES ALLEN, Lieutenant, P.C.R.D.F.; and
NIKKHOL HARRIS, Deputy, P.C.R.D.F.                                        DEFENDANTS

**RECOMMENDED DISPOSITION**

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Marshall may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

I.      INTRODUCTION

On May 12, 2023, Plaintiff Frederick J. Barton ("Barton"), then a pre-trial detainee at the Pulaski County Regional Detention Facility ("PCRDF"), filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. (Doc. 2). After the Court screened the Complaint in accordance with the Prison Litigation Reform Act,

Barton was allowed to proceed with his claims of excessive force, First Amendment retaliation, and inadequate medical care against Sergeant James Hill ("Hill"), Deputy Virmesa Jackson ("Jackson"), Sergeant Matthew Cobb ("Cobb"), Lieutenant Charles Allen ("Allen"), and Deputy Nikkhol Harris[1] ("Harris") (collectively "Defendants"). (Doc. 4 at 2). Barton brings his claims against all Defendants in both their individual and official capacities. (Doc. 2 at 2). Barton requests monetary damages in the amount of $10,000 and the following injunctive relief: (1) to see an orthopedic doctor for his ankle, (2) for the defendants to undergo anger management training, and (3) for Hill, Cobb, and Allen to receive "educational classes on civil rights at a full term university." *Id.* at 5 (cleaned up).

On February 13, 2024, Defendants filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Facts. (Docs. 45–47). Defendants argue: (1) they did not retaliate against Barton for exercising his constitutional right to free speech, (Doc. 46 at 3–11); (2) Barton was not subjected to excessive force, *id.* at 12–24; and (3) they were not deliberately indifferent to Barton's serious medical needs, *id.* at 24–31. Defendants further

---

[1] Harris was originally known as "Doe Defendant" (Doc. 4); however, on August 31, 2023, Barton filed a Motion to Amend his Complaint identifying Harris as the Doe Defendant, and service was ordered. (Docs. 29–30).

argue that they are entitled to qualified immunity, *id.* at 31–32, and there are no grounds for "official capacity/county liability," *id.* 32–38.

In response, Barton filed an unsworn Motion to Amend (Doc. 50) and, later, an unsworn Response to Defendants' Motion for Summary Judgment (Doc. 51).² The Defendants did not file a reply, and the time for doing so has passed. LOCAL RULE 7.2(b). Therefore, the issues are properly joined and ready for disposition.

Upon careful consideration of the record and viewing the evidence in the light most favorable to Barton, the Court recommends that Defendants' Motion for Summary Judgment be granted.

---

² Barton's Motion to Amend and his Response are not notarized and do not comply with 28 U.S.C. § 1746. *See Zubrod v. Hoch*, 907 F.3d 568, 574–75 (8th Cir. 2018) ("[The] Federal Rule of Civil Procedure 56(c) and 28 U.S.C. § 1746 [prohibit] a court's consideration of an unsworn statement or declaration when deciding a motion for summary judgment unless it is signed, dated, and certified as true and correct under penalty of perjury.").

## II. FACTUAL BACKGROUND

The sources for this factual background section are: (1) Barton's Complaint and Supplemental Complaint, (Docs. 2, 31); and (2) Defendants' Statement of Indisputable Material Facts, to which Defendants attached as exhibits: six body camera videos of the underlying incident,[3] (Doc. 47-7); sworn affidavits from Hill, Deputy Dustin Devore ("Deputy Devore"), Jackson, Harris, and Allen, (Docs. 47-1, 47-8–47-11); incident reports, (Doc. 47-5); and medical records, (Docs. 47-3 and 47-4).

On March 25, 2023, while attempting to place inmates back in their cells, Deputy Devore had an altercation with an inmate assigned to cell 203 (not Barton). (Video 1 at 0:13:12–0:17:19; Doc. 2 at 4). During this incident, Deputy Devore called a "Code Blue," requesting all officers to the scene, and Defendants responded. (Video 1 at 0:16:16—

---

[3] The six videos provided by the defendants contain the body camera footage from the officers present during the March 25, 2023 incident.
- The video titled "Subject_Control_-_Inmate_Nicholas_Besuglow_&_Fredrick_Barton_Video_2023-03-25_1941_X60AA560C" ("Video 1") is from Deputy Devore's body camera.
- The video titled "Subject_Control_-_Inmate_Nicholas_Besuglow_&_Fredrick_Barton_Video_2023-03-25_2000_X60AA928P" ("Video 2") is from Harris's body camera.
- The video titled "Subject_Control_-_Inmate_Nicholas_Besuglow_and_Fredrick_Barton_Video_2023-03-25_1958_X60A1037M" ("Video 3") is from Deputy Justin Holman's body camera.
- The video titled "Subject_Control_-_Inmate_Nicholas_Besuglow_and_Fredrick_Barton_Video_2023-03-25_1958_X60A28854" ("Video 4") is from Cobb's body camera.
- The video titled "Subject_Control_-_Inmates_Nicholas_Besuglow_&_Fredrick_Barton_Video_2023-03-25_1958_X60AB795R" ("Video 5") is from Hill's body camera.
- The video titled "Subject_Control_-_Inmates_Nicholas_Besuglow_&_Fredrick_Barton_Video_2023-03-25_2000_X60A25754" ("Video 6") is from Deputy Virmesa Jackson's body camera.

0:17:29). Following the altercation with the other inmate, Hill asked the inmates present if any of them wanted to fill out a witness statement. (Video 5 at 0:02:17; Doc. 2 at 4).

The events that followed are contested. Barton alleges that he "raised [his] hand to request to [write] a grievance and witness statement." (Doc. 2 at 4). However, Allen, Hill, Cobb, Jackson, and Harris all attest that they have no memory of Barton requesting a witness form. (Docs. 47-11 ¶ 4; 47-1 ¶ 8; 47-12 ¶ 6; 47-9 ¶ 3; 47-10 ¶ 4). Additionally, none of videos show Barton requesting a witness statement. In fact, video from Hill's body camera shows Hill offering witness statement forms and calling in that no one requested one. (Video 5 at 0:02:47).

The video footage, however, does show Barton arguing with Deputy Devore over what occurred with the other inmate. (Video 1 at 0:18:39). Specifically, Barton yelled that Deputy Devore was harassing the other inmate, and "[Devore] was fucking color scared." *Id.* at 0:18:44. At that point, Deputy Devore ordered Barton to "get on the floor," where Barton's bunk was located, and, as Deputy Devore approached Barton, Barton responded by raising his cane[4] and stating, "C'mon motherfucker, I'll beat your fucking ass."[5] *Id.* at 0:18:42–0:18:46; (Video 2 at 0:0:03).

Barton alleges that, following his request for a witness statement, the Defendants subjected him to excessive force. Specifically, Barton claims that:

---

[4] Deputy Devore declared that he believed he was going to be struck by Barton prior to restraining him. (Doc. 47-8 ¶ 5).

[5] In Barton's unsworn Response, he alleges that, due to his mental health issues, he was under "extreme pressure" during the March 25, 2023 incident. (Doc. 51 at 3). Barton claims that, when Deputy Devore "started to run towards" him, he raised his cane towards Deputy Devore, but says it was due to "emotional fear for my life." *Id.* at 4.

> Sargent Cobb grabbed my arm (right) that was hold my CANE, that I use to support and walk with; He force me to the ground another officer[6] put his knee to my face breaking my eye glasses. Lieutenant Allen grabbed my left arm shoving it behind me while on the ground. Sargent Hill grabbed my Legs folding them backwards crossing them by putting his knee into the ankles as a restraint like one might hog tie an animal.

(Doc. 2 at 4) (errors in original).

The body camera footage of the incident shows Barton being taken to the ground by Allen[7] and Deputy Devore. (Video 2 at 0:00:04–0:00:07). Once on the ground, Allen laid on Barton, restraining him. (Video 6 at 0:00:09). Barton's legs were crossed and restrained by Hill while Barton was being handcuffed. *Id.* at 0:00:19. Hill asserts that he saw Barton "struggling, moving his body around, kicking his legs, and resisting being handcuffed." (Doc. 47-1 ¶ 9). At that point, Hill "cross[ed] [Barton's] legs and held them to prevent [Barton] from kicking" while waiting for leg shackles. *Id.* ¶ 10. Throughout the incident, Barton threatened officers and remained generally belligerent. Specifically, Barton told officers they, "better get the fuck off me right now," and "Watch. Watch. Watch what happens you stupid motherfucker." (Video 1 at 0:18:53, 0:19:19, and 0:19:37).

Once on the ground, Barton informed officers of his broken leg. *Id.* at 0:18:58 ("My fucking leg is broken you ignorant son of a bitch."). When Cobb told Barton to relax, Barton responded, "fuck that relaxing shit." (Video 3 at 0:02:33). Barton also yanked his arm and made a fist with his hand. (Video 4 at 0:03:17). After Barton raised his fist and

---

[6] In his Supplemental Complaint, Barton identifies "another officer" as Defendant Harris. (Doc. 31).

[7] Defendant Allen maintains that he did not intend to bring Barton to the floor, but they lost their balance and "fell forward onto the floor." (Doc. 47-11 ¶ 9).

tried to lift himself up, Cobb kneeled on Barton's head. (Video 4 at 0:03:15–0:03:24; Video 3 at 0:00:34). Cobb "placed [his] right knee on [Barton's] facial area due to [Barton] making a fists [sic] and tensing his body." (Doc. 47-5 at 4). Cobb stopped kneeling on Barton's head immediately after Barton was restrained. (Video 5 at 0:03:34). Cobb attests that, when he arrived, Barton was already on the ground and was "resisting and refusing to calm down and to allow other PCRDF personnel to secure him in handcuffs and leg shackles." *Id.* ¶ 7–8. Cobb asserts he only restrained Barton in an "effort to calm him down and to allow other PCRDF personnel to secure him in the handcuffs and leg shackles." (Doc. 47-12 ¶ 9).

One minute and thirty-two seconds elapsed from the time Barton was brought to the ground to the time he was cuffed and standing again. *See* (Video 1 at 0:18:51; Video 3 at 0:03:20). Once Barton was cuffed and stood up, he informed officers that his glasses were on the ground and broken. (Video 3 at 0:03:24).

Barton was then taken to a holding cell where he was immediately medically evaluated, and his blood pressure was checked. (Video 4 at 0:05:38–0:05:47; 0:09:15–0:09:17). Barton was able to walk to the holding cell. *See id.* at 0:04:34–0:05:38. Barton was later informed that, if there were any other problems, to put in a sick call. *Id.* at 0:09:21. Barton did not mention any issues with his ankle to medical personnel. Barton admitted to Cobb that he was not in his bunk like he had been ordered. *Id.* at 0:10:16. Barton also stated that he believed the incident occurred because he told Deputy Devore that Devore was "color scared." *Id.* at 0:11:26–0:11:28. Barton never suggested to Cobb that he was trying to obtain a witness statement. Following his interview with Cobb, Barton was moved; he

7

was able to walk without any visible limp and without the assistance of his cane, even while carrying all of his belongings. *Id.* at 0:17:52–0:19:37.

Barton alleges that, since this incident, he has "continuously requested medical treatment and has been denied."[8] (Doc. 2 at 4). Defendants Allen, Hill, Cobb, Jackson, and Harris all attest that they did not interfere with Barton's medical care nor were they ever informed by Barton that he was denied care. (Docs. 47-11 ¶ 16–17; 47-1 ¶ 17–18; 47-12 ¶ 15–16; 47-9 ¶ 17–18; 47-10 ¶ 14–15). In fact, Defendants Cobb, Jackson, and Harris all assert that they have no recollection of any contact with Barton following March 25, 2023. (Docs. 47-12 ¶ 17; 47-9 ¶ 19; 47-10 ¶ 16).

According to the medical records attached to Defendants' Statement of Indisputable Material Facts, Barton filed a sick call request regarding his ankle on April 9, 2023[9]—more than two weeks *after* the March 25, 2023 incident. (Doc. 47-3 at 25). Barton then filed an additional five sick call requests regarding his ankle between April 9, 2023, and July 4, 2023; Barton's ankle was treated with naproxen and acetaminophen. (Doc. 47-4 at 11, 21–24); (Doc. 47-3 at 25).[10]

---

[8] Barton also alleges in his unsworn Statement of Disputed Facts that he asked Cobb and Hill to contact medical again on March 25, 2023, but they failed to do so. (Doc. 51 at 10).

[9] Barton was seen by medical staff on March 27, 2023, for ear wax removal, (Doc. 47-4 at 18-19), and on April 8, 2023, for a mental health appointment, (Doc. 47-4 at 19).

[10] The Court notes that, as early as September of 2022, Barton began submitting sick call requests regarding his ankle. (Doc. 47-3 at 8). Barton informed medical personnel at that time that his ankle was in pain due to a fracture that occurred in 2003 and required surgery. (Doc. 47-4 at 12). He requested sick calls regarding leg and ankle pain on October 18, 24, and 26, 2022; November 19, 25, and 26, 2022; December 3, 15, and 30, 2022; January 10, 2023; February 17, 20, 21, and 22, 2023; and March 14, 2023. *Id.* at 9–25. During this period, Barton's ankle was treated with a brace, a lower-bunk script, use of a cane, and Tylenol. (Doc. 47-3 at 13, 17–18, 22–23); (Doc. 47-4 at 2, 4).

## III. DISCUSSION

Barton alleges that Defendants: (1) used excessive force on him while he was a pretrial detainee, in violation of his Due Process rights; (2) retaliated against him for exercising his First Amendment rights; and (3) failed to provide him with adequate medical care. For the reasons discussed below, the Court recommends dismissal of Barton's excessive force and First Amendment retaliation claims because Barton cannot show a violation of his constitutional rights, and Defendants are entitled to qualified immunity. With respect to Barton's inadequate medical care claim, the Court recommends dismissal for failure to state a claim.

### A. Qualified Immunity

Defendants argue in their Motion for Summary Judgment[11] that they are entitled to qualified immunity on Barton's claims. Qualified immunity protects government officials from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense at the summary judgment stage, Barton must demonstrate: "(1) a

---

[11] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

9

deprivation of a constitutional right, [that was] (2) … clearly established at the time of the deprivation." *Robbins v. City of Des Moines*, 984 F.3d 673, 678 (8th Cir. 2021). Whether qualified immunity applies to the case at hand is a question of law, not fact, for the court to decide. *Kelsay v. Ernest*, 933 F.3d 975, 981 (8th Cir. 2019). The Court may address either inquiry first. *See Duffie v. City of Lincoln*, 834 F.3d 877, 832 (8th Cir. 2016). The Defendants are entitled to qualified immunity should *either* prong be decided in their favor. *Watson v. Boyd*, 2 F.4th 1106, 1112 (8th Cir. 2021) (citations omitted).

The Court will consider first whether Barton was deprived of a constitutional right, as that issue is dispositive.[12]

### 1. Barton's Excessive Force Claim

Barton was a pretrial detainee at the time of the incident; therefore, his excessive force claim is considered under the Due Process Clause of the Fourteenth Amendment. *Glover v. Paul*, 78 F.4th 1019, 1021 (8th Cir. 2023). To prevail, Barton must establish that "the force used against him was objectively unreasonable." *Id.* When determining whether the force was objectively unreasonable, the Court must "consider whether the actions of a governmental officer are rationally related to a legitimate nonpunitive governmental purpose, and whether the actions appear excessive in relation to that purpose." *Id.* (cleaned up). When analyzing the reasonableness of the force used in a specific case, the U.S. Supreme Court has identified the following non-exhaustive factors: "the relationship between the need for the use of force and the amount of force used; the extent of the

---

[12] Because the Court recommends dismissing Barton's inadequate-medical-care claim on other grounds, the Court does not discuss whether Defendants are entitled to qualified immunity on that claim.

10

plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

Regarding force against inmates involved in a prison disturbance, the main inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (internal quotations and citations omitted); *see also Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013). The objective standard articulated in *Kingsley* "protects an officer who acts in good faith." 576 U.S. at 399. Thus, "[A] court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Id.*

The parties do not dispute that the March 25, 2023 incident involving Barton was preceded by an unrelated disturbance. A "Code Blue" had been called, alerting all officers in the area that a deputy needed assistance. (Video 1 at 0:16:16–0:17:19); (Doc. 47-12 ¶ 2). During a Code Blue, inmates are required to go to their assigned spaces. (Doc. 47-12 ¶ 3). Barton admits he did not do as instructed and remained outside of his bunk. (Video 4 at 0:10:16). Based on the video evidence, immediately following the resolution of the initial disturbance with the other inmate, Barton began yelling at Deputy Devore about Devore's actions during the previous disturbance. (Video 1 at 0:18:39). Rather than moving directly to the use of force, Deputy Devore ordered Barton to his bunk.[13] *Id.* at 0:18:42–0:18:46. It

---

[13] Notably, Deputy Devore is *not* a party to this lawsuit.

11

was only after Barton failed to return to his bunk that Deputy Devore moved towards him. *Id.* at 0:18:44. And, it was only after Barton raised his cane against Deputy Devore that Allen attempted to restrain Barton. *Id.* at 0:18:46. According to Allen, he was not trying to put Barton on the floor; rather, he and Barton fell to the ground. (Doc. 47-11 ¶ 4).

Once Barton was on the ground, Barton continued to threaten the Defendants and actively resist the cuffs and leg shackles Defendants were attempting to place on him. This active resistance, combined with the threats, resulted in the need for further action. *See, e.g., Kohorst v. Smith*, 968 F.3d 871, 876 (8th Cir. 2020) ("An officer is entitled to use the force necessary to effect an arrest where a suspect 'at least appears to be resisting.' We have upheld the use of force where a suspect is non-compliant and resists arrest or ignores commands from law enforcement.") (cleaned up) (quoting *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017)). Specifically, Hill stated that the only reason he restrained Barton's legs was because Barton was "struggling, moving his body around, kicking his legs, and resisting being handcuffed." (Doc. 41-1 ¶ 9). Likewise, Cobb stated that he only immobilized Barton's head when Barton would not stop resisting and refused to calm down, going so far as to make a fist at officers. (Doc. 47-12 ¶ 7–9); *see also Jones v. N. Carolina Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 132–33 (1977) ("Responsible prison officials must be permitted to take reasonable steps to forestall such a threat, and they must be permitted to act before the time when they can compile a dossier on the eve of a riot"). Defendant Cobb's version of events is reflected in the video evidence.

Finally, Cobb attempted repeatedly to get Barton to calm down and comply during the incident by asking Barton to "relax" and trying to talk to Barton. (Video 4 at 0:03:07–

0:03:39). Barton responded, "fuck that relaxing shit." (Video 3 at 0:02:33). Cobb, as shown in the videos, did not move to kneel on Barton's head until after Barton actively resisted and attempted to stand up. Notably, Barton does not allege *any* head injuries. Moreover, the entire incident took less than two minutes, and Barton did not make any medical complaints at that time; in fact, Barton was able to walk while holding his possessions and without the aid of a cane immediately following the incident. Furthermore, Barton made no complaints about his ankle when medical officers performed their post-use-of-force medical examination. *See* (Video 4 at 0:05:38–0:05:38, 0:09:15–0:09:17); (Doc. 47-6 at 57).

Even if Barton's Response was sworn, it does not contradict the video evidence. Rather, Barton admits being "verbally aggressive." (Doc. 51 at 4). Barton also admits that, after Deputy Devore "started to run towards" him, he raised his cane. *Id.*; *see Jasper v. Thalacker*, 999 F.2d 353, 354 (8th Cir. 1993) (holding that threats combined with the plaintiff lunging towards a guard justified multiple guards grabbing the plaintiff and the use of a stun gun).

In the instant case, Defendants did not use any weapons: Barton was not stunned, sprayed, hit, nor shot. Rather, Barton was brought to the ground for only so long as it took for him to stop resisting and to be cuffed and shackled. The body camera videos show the incident fairly clearly, and Barton fails to meet "proof with proof," contradicting the video evidence. *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000)) ("When the movant makes a prima facie showing of entitlement to a summary judgment, the

respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.").

Accordingly, because the evidence, viewed in a light most favorable to Barton, does not show that the force used against Barton was objectively unreasonable under the circumstances, Barton has not shown a deprivation of a constitutional right. Defendants are entitled to qualified immunity as to Barton's excessive force claims.

### 2. Barton's First Amendment Retaliation Claim

To state a § 1983 retaliation claim, Barton must plead that: (1) he engaged in constitutionally protected activity; (2) Defendants took adverse actions against him that would chill a prisoner of ordinary firmness from engaging in that activity; and (3) his protected activities were the "but-for cause" of Defendants' adverse actions. *De Rossitte v. Correct Care Sols.*, LLC., 22 F.4th 796, 804 (8th Cir. 2022); *Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). "Speculative and conclusory allegations cannot support a retaliation claim." *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam).

Barton alleges in his Complaint that he asked for a witness statement form and a grievance form, which led directly to the use of force against him. "A prisoner's right under the First Amendment to petition for redress of grievances under a prison's grievance procedures is clearly established in this [circuit]." *Nelson v. Shuffman*, 603 F.3d 439, 449-50 (8th Cir. 2010) (citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989)). "Similarly, it has for over [thirty] years been the law of this circuit that actions taken in retaliation for an inmate's filing of a grievance are actionable under 42 U.S.C. § 1983." *Id.*

However, the evidence of record fails to support Barton's retaliation claim. In fact, other than Barton's own statements, there is no evidence that Barton asked for a witness statement form or a grievance form prior to the use of force against him. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *see also Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010) ("Although we view the facts and any reasonable inferences in the light most favorable to [Petitioner] we cannot ignore incontrovertible evidence which clearly contradicts [Petitioner]'s allegations.") (citations omitted).

The body camera videos do not show Barton asking for a grievance form or witness statement form, and none of the Defendants recall Barton asking for any such forms. *See Scott*, 550 U.S. at 378 (holding that when undisputedly reliable video footage captures the relevant events, the evidence should be viewed in "the light depicted by the videotape."). Absent any evidence to the contrary, Barton has not provided sufficient grounds for a reasonable jury to find that he was participating in a constitutionally protected activity. And, without a protected activity, no violation occurred.

Moreover, even if Barton had requested a witness form and/or a grievance form, he has not illustrated a causal connection between his request and Defendants' use of force. In fact, Defendants Cobb and Hill were proactively soliciting inmates to fill out witness forms in connection with Deputy Devore's altercation with another inmate. (Docs. 47-4 ¶ 8; 47-12 ¶ 6). Furthermore, Defendant Allen, an officer at the jail, stated in the official

15

Case Report regarding "Subject Control – Inmates Besuglow, Nicholas (01827-23) & Barton, Nicholas (08819-22)" that the actions taken by Deputy Devore in the initial interaction with inmate Besuglow were "not within policy and could have been handled in a different manner." (Doc. 47-5 at 8–9). There is simply no evidence in the record to suggest that any request for a witness statement form or grievance form was met with any use of force. Rather, the evidence in the record shows that the use of force against Barton occurred after Barton's lack of compliance with orders from officers and raising his cane towards Deputy Devore.

Accordingly, because the evidence of record does not support Barton's claim that Defendants retaliated against him for exercising his First Amendment rights, Barton has not shown a deprivation of a constitutional right. This Court recommends that the Defendants be granted qualified immunity as to this claim.

**B.     Barton's Fails to State a Claim for Inadequate Medical Care[14]**

In order to state a claim—at a minimum—a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* FED. R. CIV. P. 8(d) (stating allegations must be "simple, concise, and direct"). "[L]abels and conclusions," a "formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are insufficient to plead a plausible claim. *Iqbal*, 556 U.S.

---

[14] The Court may *sua sponte* dismiss a claim for failure to state a claim, without granting the Plaintiff the ability to respond, when it is "patently obvious the plaintiff could not prevail based on the facts alleged in the Complaint." *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991).

at 678. Finally, a prisoner's § 1983 complaint must allege facts sufficient to show how each defendant was personally involved in the alleged constitutional wrongdoing. *Id*. at 676; *see also Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2020) (holding a complaint "must contain facts sufficient to state a claim as a matter of law and must not be merely conclusory in its allegations.").

Cases involving denial of medical care claims brought by pretrial detainees have "borrow[ed] from the Eighth Amendment deliberate-indifference standard applicable to claims of prison inmates." *Bailey v. Feltman*, 810 F.3d 589, 593 (8th Cir. 2016); *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006). To plead a plausible inadequate medical care claim under the Eighth Amendment, a plaintiff must allege and prove that: (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs. *De Rossitte v. Correct Care Sols., LLC.*, 22 F.4th 796, 802 (8th Cir. 2022). Prison guards can be found to have provided inadequate medical care by "denying or delaying access to medical care" or by "intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Barton's Complaint fails to allege an inadequate-medical-care claim against any of the named Defendants. Specifically, Barton's Complaint contains no facts to show: (1) which defendants, if any, were aware of his need for medical care; (2) which defendants failed to provide adequate medical care; (3) how defendants failed to provide adequate medical care; (4) which defendants delayed him access to medical care and how; or (5) which defendants interfered with his treatment and how. No medical personnel are named

17

as defendants in Barton's Complaint, and he does not suggest that *any* Defendants interfered with his ability to access medical care. Rather, Barton's only allegation regarding medical care is, "I have continuously requested medical treatment and been denied." (Doc. 2 at 4).

Barton's vague allegation fails to show how any Defendant was personally involved in the alleged constitutional wrongdoing. Accordingly, the Court recommends that Barton's inadequate-medical-care claim be dismissed for failure to state a claim.

C.   **Official-Capacity Claims**

Barton also sues Defendants in their official capacities. (Doc. 2 at 2). Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, a suit against a defendant in his official capacity is in essence a suit against the County or city itself. *See Murray v. Lene*, 595 F.3d 868 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998). Pulaski County can be held liable in this § 1983 action if a constitutional violation resulted from: (1) an official policy, (2) an unofficial practice/custom, or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence, MO.*, 829 F.3d 695, 699 (8th Cir. 2016) (citations omitted). A municipality cannot be held liable unless there was an unconstitutional act by one of its employees. *Smith*, 73 F.4th at 601 (citing *Webb v. City of Maplewood*, 889 F.3d 483, 486–87 (8th Cir. 2018)).

Even liberally construing Barton's Complaint, Barton has not established that a constitutional violation occurred, and Barton makes no reference to any official policy, unofficial practice/custom, or a failure to train—deliberate or otherwise. Therefore, the

18

Court recommends granting Defendants' Motion for Summary Judgment on Barton's official-capacity claims.

### D. Barton's Motion to Amend

On March 3, 2024, Barton filed a second Motion to Amend his Complaint. (Doc. 50). First, Barton alleges that Hill is the individual who disposed of his reading glasses. Second, Barton alleges that the individual who had a knee to his face was actually Cobb, not Harris. As stated previously, the individual who put their knee to Barton's face was originally identified as "Doe Defendant." (Doc. 4). Barton, in his First Amended Complaint, identified Harris as "Doe Defendant." (Doc. 29).

The Court recommends that Barton's Motion to Amend be granted. Barton's Motion to Amend, (Doc. 50), should be docketed as Barton's Second Supplemental Complaint.

## IV. CONCLUSION

For the reasons stated herein, the Defendants are entitled to qualified immunity on Barton's excessive force and First Amendment retaliation claims. Additionally, Barton's inadequate-medical-care claim should be dismissed for failure to state a claim. Accordingly, the Court recommends that Defendants' Motion for Summary Judgment be granted.

IT IS THEREFORE RECOMMENDED THAT:

1. Barton's Motion to Amend, (Doc. 50), be GRANTED and filed as Barton's "Second Supplemental Complaint."

2. Defendants' Motion for Summary Judgment, (Doc. 45), be GRANTED.

3.  Barton's excessive force and First Amendment retaliation claims be DISMISSED, with prejudice.

4.  Barton's inadequate-medical-care claim be DISMISSED, without prejudice, for failure to state a claim upon which relief may be granted.

5.  Judgment be entered accordingly.

DATED this 13th day of August, 2024.

_____
UNITED STATES MAGISTRATE JUDGE